1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Claude M. Stern (SBN 96737)
2     Michael D. Powell (SBN 202850)
    555 Twin Dolphin Dr., 5th Floor
3   Redwood Shores, CA  94065
    Tel. 650-801-5000
4   Fax 650-801-5100

5   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Minyao Wang (admitted *pro hac vice*)
6   51 Madison Ave., 22nd Floor
    New York, NY 10010
7   Tel. 212-849-7000
    Fax 212-849-7100

8

9   Attorneys for Defendants

10

                    UNITED STATES DISTRICT COURT

11

          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

12

13
    Koninklijke Philips N.V. and Philips Lumileds      CASE NO. 5:14-CV-02737-BLF
14  Lighting Company LLC,
                                                       **DEFENDANTS ELEC-TECH**
15             Plaintiff,                               **INTERNATIONAL CO., LTD. AND**
                                                       **ELEC-TECH INTERNATIONAL (H.K.)**
16         vs.                                         **CO., LTD.'S NOTICE OF MOTION AND**
                                                       **MOTION FOR CIVIL CONTEMPT**
17  Elec-Tech International Co., Ltd., Elec-Tech       **AND/OR FOR SANCTIONS AGAINST**
    International (H.K.) Co., Ltd., Wuhu Elec-         **PLAINTIFFS AND REED SMITH LLP**
18  Tech Photoelectric Technology Co., Ltd., ETI      **FOR VIOLATIONS OF THE**
    Yangzhou Photovoltaic Technology Co., Ltd.,       **PARTIES'AGREED PROTECTIVE**
19  Dalian Deheo Photovoltaic Technology Co.,         **ORDER**
    Ltd., Shenzhen Retop LED Display Co., Ltd.,
20  ETI Solid State Lighting Inc., ETI LED
    Solutions Inc., Donglei Wang, Eva Chan, and
21  Gangyi Chen,

22             Defendants.

23

24

25

26

27

28
    ─────────────────────────────────────────────────────────────
    DEFENDANTS ELEC-TECH INTERNATIONAL CO., LTD. AND ELEC-TECH INTERNATIONAL (H.K.) CO.,
    LTD.'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT AND/OR FOR SANCTIONS AGAINST
    PLAINTIFFS AND REED SMITH LLP FOR VIOLATIONS OF THE PARTIES' AGREED PROTECTIVE ORDER

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

I.  PROCEDURAL AND FACTUAL HISTORY ...................................................... 3

    A.  Events Leading Up To The Dismissal Of The Federal Complaint ........................... 3

    B.  The Agreed Protective Order ............................................................ 4

    C.  The Filing Of The State Complaint ...................................................... 5

II.  ARGUMENT ......................................................................................... 9

    A.  Applicable Legal Standard ............................................................. 9

    B.  The Court Should Find Plaintiffs And Reed Smith In Contempt .......................... 10

    C.  The Court Should Order Plaintiffs To Pay For Losses Incurred By Moving Defendants As A Result Of The Contempt, Order Plaintiffs To Refile An Amended State Complaint And Preclude Plaintiffs From Using Defendants' Confidential Information Obtained In This Proceeding For Any Purpose. ............ 13

III.  CONCLUSION .................................................................................... 15

DEFENDANTS ELEC-TECH INTERNATIONAL CO., LTD. AND ELEC-TECH INTERNATIONAL (H.K.) CO., LTD.'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT AND/OR FOR SANCTIONS AGAINST PLAINTIFFS AND REED SMITH LLP FOR VIOLATIONS OF THE PARTIES' AGREED PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Page**

### Cases

*Allia v. Target Corp., No. CIVA07-4130 NLHAMD,*
    2010 WL 1050043 (D.N.J. Mar. 17, 2010) ........................................................... 11

*Aloe Vera of America, Inc. v. US,*
    376 F. 3d 960 (9th Cir. 2004) ........................................................................... 15

*Bradford Technologies, Inc. v. NCV Software.com,*
    2013 WL 75772 (N.D. Cal. Jan. 4, 2013) ........................................................... 14

*Cadence Pharm., Inc. v. Fresenius Kabi USA, LLC,*
    No. 13-CV-00139 DMS MDD, 2014 WL 3341068 (S.D. Cal. July 8, 2014) .............. 14

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ......................................................................................... 15

*In re Crystal Palace Gambling Hall,*
    817 F.2d 1361 (9th Cir. 1987) ......................................................................... 13

*In re Dual-deck Video Cassette Recorder Antitrust Litigation,*
    10 F.3d 693 (9th Cir. 1993) ..................................................................... 9, 10, 13

*Fink v. Gomez,*
    239 F.3d 989 (9th Cir. 2001) ............................................................................. 9

*F.T.C. v. Affordable Media,*
    179 F.3d 1228 (9th Cir. 1999) ........................................................................... 9

*In re Grand Jury Subpoena,*
    646 F.3d 159 (4th Cir. 2011) ........................................................................... 13

*In re Grand Jury Subpoenas,*
    627 F.3d 1143 (9th Cir. 2010) ......................................................................... 13

*Henderson v. City and County of San Francisco,*
    2006 WL 3507944 (N.D.Cal. 2006) ................................................................... 15

*Info. Res., Inc. v. Dun & Bradstreet Corp.,*
    999 F. Supp. 591 (S.D.N.Y. 1998) ..................................................................... 13

*On Command Video Corp. v. Lodgenet Entertainment Corp.,*
    976 F. Supp. 917 (N.D. Cal. 1997) ............................................................. 9, 10, 11

*In Re Pacific Pictures Corp.,*
    679 F.3d 1121 (9th Cir. 2012) ......................................................................... 12

*Sperry Rand Corp. v. Rothlein,*
    288 F.2d 245 (2d Cir. 1961) ........................................................................... 14

*U.S. ex rel. Johnson v. Golden Gate Nat. Sr. Care, L.L.C.*,
   No. CIV. 08-1194 DWF/JJK, 2013 WL 1182905 (D. Minn. Mar. 21, 2013)...........................11

### **Statutes and Rules**

Cal. Civ. Proc. Code § 2019.210.............................................................................................3, 4

Fed. R. Civ. P. 26...................................................................................................................3

Fed. R. Civ. P. 37................................................................................................................9, 14

Case No. 5:14-CV-02737-BLF

DEFENDANTS ELEC-TECH INTERNATIONAL CO., LTD. AND ELEC-TECH INTERNATIONAL (H.K.) CO.,
LTD.'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT AND/OR FOR SANCTIONS AGAINST
PLAINTIFFS AND REED SMITH LLP FOR VIOLATIONS OF THE PARTIES' AGREED PROTECTIVE ORDER

1

## NOTICE OF MOTION AND MOTION

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that Elec-Tech International Co., Ltd. ("ETI") and Elec-Tech

4   International (H.K.) Co., Ltd (together with ETI, "Moving Defendants") will and hereby do move

5   the Court for an order issuing civil contempt sanctions against Plaintiffs Koninklijke Philips N.V.

6   and Philips Lumileds Lighting Company LLC (together "Plaintiffs") and their counsel Reed Smith

7   LLP ("Reed Smith") for violating the Northern District of California's Agreed Protective Order

8   for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets

9   promulgated by the United States District Court for the Northern District of California (the

10   "Agreed Protective Order"), by which the parties expressly agreed to abide.

11         This Motion is based on this Notice of Motion, the supporting Memorandum of Points and

12   Authorities, the pleadings and documents on record in this matter, and such other written or oral

13   evidence and argument as may be presented at or before the time this motion is deemed submitted

14   by the Court.

15

## INTRODUCTION

16         Plaintiffs originally brought suit against Elec-Tech International Co., Ltd., Elec-Tech

17   International (H.K.) Co., Ltd., Wuhu Elec-Tech Photoelectric Technology Co., Ltd., ETI

18   Yangzhou Photovoltaic Technology Co., Ltd., Dalian Deheo Photovoltaic Technology Co., Ltd.,

19   Shenzhen Retop LED Display Co., Ltd., ETI Solid State Lighting Inc., ETI LED Solutions Inc.,

20   Donglei Wang, Eva Chan, and Gangyi Chen (collectively, "Defendants") in this Court alleging

21   misappropriation of trade secrets and other related claims.   Dkt. No. 1.   All of Plaintiffs' claims

22   were dismissed by this Court on March 20, 2015.   Dkt. No. 122.   Four days later, on March 24,

23   2015, Plaintiffs filed a new complaint in California Superior Court for the County of Santa Clara

24   (the "State Court Action") against Defendants other than Shenzhen Retop LED Display Co., Ltd.

25   and ETI LED Solutions Inc.[1]   Defendants' counsel were unable to obtain a copy of Plaintiffs'

26

27   ───────────────

28   [1]   The new state action is numbered 1-15-CV-278566 in the Superior Court for the County of
     Santa Clara.

Case No. 5:14-CV-02737-BLF

1  State Court Action complaint (the "State Complaint") until April 1, 2015.[2]   Declaration of

2  Michael D. Powell ("Powell Declaration"), Ex. A.

3       A review of the State Complaint led Moving Defendants to conclude that Plaintiffs had

4  impermissibly utilized and relied upon certain documents produced in this action by Moving

5  Defendants in preparing the State Complaint—documents that had been produced to Plaintiffs

6  under the Agreed Protective Order and designated as highly confidential.   The Agreed Protective

7  Order prohibits Plaintiffs from using those documents for anything other than prosecuting this

8  (now terminated) case before this Court; it further prohibits Reed Smith from sharing such

9  documents with any other persons or entities (other than qualified retained experts and court

10  personnel), including even Plaintiffs.

11       On April 2, 2015, Defendants' counsel informed Reed Smith of what appeared to be

12  violations by Plaintiffs and Reed Smith of the Agreed Protective Order.   Reed Smith denied any

13  improper use of Moving Defendants' designated discovery materials and confidential information,

14  but nonetheless subsequently agreed as an interim measure to retract the State Complaint from the

15  public record and replace it with a redacted version, and the parties so stipulated in the Superior

16  Court on May 15, 2015.   The redacted State Complaint is attached as Exhibit B to the Powell

17  Declaration.   At the time, Defendants reserved their rights to seek sanctions for violations of the

18  Agreed Protective Order.   Thus, this Motion seeks monetary and other sanctions for Plaintiffs'

19  disclosure and use of Defendants' confidential information and/or an order to show cause as to

20  why Plaintiffs and/or Reed Smith should not be held in contempt.

21       Suspiciously, while the parties were discussing Plaintiffs' improper use of Defendants'

22  confidential information in preparing the State Complaint, Plaintiffs provided notice, on April 23,

23  2015, to Defendants that the United States Department of Justice ("DOJ") had issued grand jury

24  subpoenas calling for the production of all documents produced by Defendants to Plaintiffs in this

25

26       [2]   Between the March 24, 2015 filing date of the State Court Action and April 1, 2015,
Defendants twice attempted to obtain a copy of the State Complaint by sending personnel to the
27  Superior Court courthouse in downtown San Jose, California, where the court clerks indicated that
the State Complaint was not yet available for copying or viewing.   Subsequently, Reed Smith
28  emailed a copy of the State Complaint to Defendants' counsel.

DEFENDANTS ELEC-TECH INTERNATIONAL CO., LTD. AND ELEC-TECH INTERNATIONAL (H.K.) CO.,
LTD.'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT AND/OR FOR SANCTIONS AGAINST
PLAINTIFFS AND REED SMITH LLP FOR VIOLATIONS OF THE PARTIES' AGREED PROTECTIVE ORDER

1   case.   Shortly thereafter, on May 1, 2015, Plaintiffs unilaterally raised the issue of when and

2   whether Plaintiffs would be required to destroy documents under the Agreed Protective Order, and

3   claimed that Plaintiffs were subject to potentially conflicting document preservation obligations

4   under the subpoenas and the destruction obligations under the Agreed Protective Order.   Tellingly,

5   the required date of response for the grand jury subpoenas was May 19, 2015—the very same day

6   that Plaintiffs evidently believed that it could be subject to document destruction obligations.   Dkt.

7   No. 137, at 2-3 (May 11, 2015 administrative motion).   The timing of Plaintiffs' concerns and the

8   coincidence of the May 19 date suggest (if not prove) that Plaintiffs are cooperating with the DOJ

9   in connection with a criminal investigation into one or more Defendants.   Consequently,

10  Plaintiffs' misuse of the Moving Defendants' designated discovery materials and confidential

11  information is highly prejudicial and should not go unpunished.

12  **I.        PROCEDURAL AND FACTUAL HISTORY**

13          **A.        Events Leading Up To The Dismissal Of The Federal Complaint**

14          On June 12, 2014, Plaintiffs Koninklijke Philips N.V. and Philips Lumileds Lighting

15  Company LLC, represented by Reed Smith, filed their Complaint (Dkt. No. 1) against Defendants.

16  On October 1, 2014, Defendants filed three separate motions to dismiss (Dkt. Nos. 34, 35, and 36)

17  for, respectively, lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to

18  state a claim upon which relief could be granted.

19          On October 23, 2014, after the Rule 26(f) conference, the parties served numerous sets of

20  discovery on each other—Plaintiffs served separate "jurisdictional" discovery requests for

21  documents on each defendant, and ETI served document requests, interrogatories, and requests for

22  inspection on Plaintiffs.   On November 5, 2014, Plaintiffs served additional discovery requests on

23  ETI.   The parties soon entered into multiple rounds of meet-and-confers on multiple issues

24  preventing the parties from producing discovery, including the scope of the parties' respective

25  discovery requests and Plaintiffs' failure to adequately disclose the trade secrets that Defendants

26  allegedly misappropriated as required under California Civil Procedure Code Section 2019.210.

27  ETI also subpoenaed several third parties identified by Plaintiffs in their initial disclosures under

28  Fed. R. Civ. P. 26.

1   The parties remained at an impasse and on December 22, 2014, the parties filed a

2   discovery dispute joint report pursuant to the rules of Judge Howard Lloyd, the magistrate judge

3   assigned to this case.   *See* Dkt. No. 66.   That same day, Defendants moved for leave to file a

4   motion for a protective order barring Plaintiffs from taking any discovery until the Section

5   2019.210 issue had been resolved.   *See* Dkt. No. 68.   In a good faith attempt to move the

6   discovery process forward, Defendants agreed to make limited jurisdictional discovery available to

7   Plaintiffs, without waiving their rights under California Civil Procedure Code Section 2019.210.

8   Accordingly, 5,880 pages of jurisdictional discovery materials were produced by Defendants to

9   Plaintiffs, many of which were designated as HIGHLY CONFIDENTIAL – ATTORNEYS'

10  EYES ONLY.

11  Numerous discovery disputes continued to crop up between the parties, which led to the

12  filing of second, third, fourth, and fifth joint reports.   *See* Dkt. Nos. 78, 81, 106, and 107.   In

13  particular, the parties' fifth discovery joint report ("Joint Report No. 5") focused exclusively on

14  the collusive and cooperative relationship between Plaintiffs, their counsel, and the DOJ.   In Joint

15  Report No. 5, ETI argued that Plaintiffs' production of certain documents to the DOJ and the

16  Federal Bureau of Investigation operated as a waiver of privilege with respect to those documents.

17  Judge Lloyd did not adjudicate any of the parties' discovery disputes.

18  Briefing on Defendants' motions to dismiss closed on February 23, 2015.   The Court

19  heard arguments on Defendants' motions on March 12, 2015.   In an Order issued on March 20,

20  2015, the Court found that Plaintiffs had failed to state a claim with respect to Plaintiffs' cause of

21  action under the federal Computer Fraud and Abuse Act.   *See* Dkt. No. 122, at 9-10.   With

22  Plaintiffs' only federal cause of action dismissed and with Plaintiffs' voluntary withdrawal of their

23  assertion of diversity jurisdiction, *see id.* at 2, the Court declined to exercise supplemental

24  jurisdiction over Plaintiffs' remaining state-law claims and dismissed this action.   *Id.* at 10.

25  ### B.   The Agreed Protective Order

26  The parties and their counsel agreed to abide by the terms of the Agreed Protective Order.

27  *See* Docket No. 56 at 14.   The Agreed Protective Order expressly notes at the outset that the

28  parties might exchange confidential, proprietary, or private information that may not be used "for

-4-

1  any purpose other than prosecuting *this* litigation."   ¶ 1 (emphasis added).   The Agreed

2  Protective Order permits parties and their counsel to "use Protected Material" only in connection

3  with "*this* case." ¶ 7.1 ("A Receiving Party may use Protected Material that is disclosed or

4  produced by another Party or by a Non-Party in connection **with this case only** for prosecuting,

5  defending, or attempting to settle ***this litigation***") (emphasis added).   Accordingly, Plaintiffs and

6  Reed Smith are not permitted to utilize any Protected Material in connection with the

7  commencement or prosecution of a new action in any court.   The Agreed Protective Order further

8  limits disclosure of Protected Materials to specific categories of individuals and entities,

9  depending upon the level of designation, ¶¶ 7.2, 7.3.   HIGHLY CONFIDENTIAL –

10  ATTORNEYS' EYES ONLY is the highest form of protection available under the Agreed

11  Protective Order and distribution of such documents is limited to outside counsel, outside experts

12  and certain court personnel.   ¶ 7.3.   Reed Smith is not permitted to disclose HIGHLY

13  CONFIDENTIAL materials even to Plaintiffs, ¶ 7.3, let alone disseminate them in a publicly

14  accessible document.

### C.      The Filing Of The State Complaint

16         Four days after the dismissal of the federal complaint, Plaintiffs, again represented by Reed

17  Smith, filed a civil complaint in state court against the Defendants (except for Shenzhen Retop

18  LED Display Co., Ltd, and ETI LED Solutions Inc. which were not named as a defendant in the

19  new state complaint).   In preparing the State Complaint, Reed Smith disregarded the express

20  terms of the Agreed Protective Order that precludes it from using confidential information

21  acquired in this litigation for another case.

22         Examples of the violations of the Agreed Protective Order committed by Reed Smith and

23  Plaintiffs in the State Complaint include, without limitations, the following:

24  • ████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ██████████████████████   This allegation is derived at least in part from, without

28  limitations, Exhibits 1, 3, 6, 7, 12, 15, 16, 17, 18, 19, 20, 23, 24, 28, 31, 39, 41, 44, 45 and

50 to the Declaration of Lawrence E. James, Jr. in Support of Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. Nos. 88-7 & 91-7 (the "James Declaration"), all of which were designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.   The aforementioned exhibits are attached to the Powell Declaration as Exhibits C, D, F, G, K, N, O, P, Q, R, S, T, U, V, W, X, Y, AA, BB, and CC, respectively.

• ████████████████████████████████████████████

████████████████████████████████ This allegation is derived at least in part from, without limitations, Exhibits 8, 9, 10, 13, 14, 44, 45, and 50 to the James Declaration, which were designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.   The aforementioned exhibits are attached to the Powell Declaration as Exhibits H, I, J, L, M, AA, BB, and CC, respectively.

• ████████████████████████████████████████████

████████████████████████████████████████████████

██████████ This allegation is derived at least in part from, without limitations, Exhibits 3 and 7 to the James Declaration.   The aforementioned exhibits are attached to the Powell Declaration as Exhibits D and G, respectively.

• ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ This allegation is derived at least in part from, without limitations, Exhibits 1, 3, 5, 6, 7, 12, 15, 16, 17, 18, 19, 20, 23, 24, 28, 31, 39, and 41 to the James Declaration, all of which were designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.   The aforementioned exhibits are attached to the Powell Declaration as Exhibits C, D, E, F, G, K, N, O, P, Q, R, S, T, U, V, W, X, and Y, respectively.

1  • ████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████  This allegation is derived at least in part from, without limitations,

5  Exhibits 1, 3, 6, 7, 12, 15, 16, 17, 18, 19, 20, 23, 24, 28, 31, 39, 41, 44, 45 and 50 to the

6  James Declaration, all of which were designated HIGHLY CONFIDENTIAL –

7  ATTORNEYS' EYES ONLY.   The aforementioned exhibits are attached to the Powell

8  Declaration as Exhibits C, D, F, G, K, N, O, P, Q, R, S, T, U, V, W, X, Y, AA, BB, and

9  CC, respectively.

10  • ████████████████████████████████████████████████

11  █████████████████████████████  This allegation is derived at least in part from,

12  without limitations, Exhibits 8, 9, 10, 13, 14, 43, 44, 45, and 50 to the James Declaration,

13  which were designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.

14  The aforementioned exhibits are attached to the Powell Declaration as Exhibits H, I, J, L,

15  M, Z, AA, BB, and CC, respectively.

16  • ████████████████████████████████████████████████

17  █████████████████████████████  This allegation is derived at

18  least in part from, without limitations, Exhibits 8, 9,10, 13, 14, 44, 45, and 50 to the James

19  Declaration, which were designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

20  ONLY.   The aforementioned exhibits are attached to the Powell Declaration as Exhibits

21  H, I, J, L, M, AA, BB, and CC respectively.

22  • ████████████████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████

25  This allegation is derived at least in part from, without limitations, Exhibit 50 to the James

26  Declaration, which was designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

27  ONLY.   The aforementioned exhibit is attached to the Powell Declaration as Exhibit CC.

28

1    • ████████████████████████████████████████████████████

2    ██████████████████████████████ This allegation is derived at

3    least in part from, without limitations,    Exhibit 50 to the James Declaration, which was

4    designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.    The

5    aforementioned exhibit is attached to the Powell Declaration as Exhibit CC.

6    • ████████████████████████████████████████████████

7    ████████████████████████████████████████████

8    ██████████████████ This allegation is derived at least in part from, without

9    limitations,    Exhibit 50 to the James Declaration, which was designated HIGHLY

10   CONFIDENTIAL – ATTORNEYS' EYES ONLY.    The aforementioned exhibit is

11   attached to the Powell Declaration as Exhibit CC.

12   • ██████████████████████████████████████

13   ██████████████ This allegation is derived at least in part from, without limitations,

14   Exhibit 50 to the James Declaration, which was designated HIGHLY CONFIDENTIAL –

15   ATTORNEYS' EYES ONLY.    The aforementioned exhibit is attached to the Powell

16   Declaration as Exhibit CC.

17   • ████████████████████████████████████████████████████

18   ███████████████████████████ This allegation is derived

19   at least in part from, without limitations,    Exhibit 50 to the James Declaration, which was

20   designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.    The

21   aforementioned exhibit is attached to the Powell Declaration as Exhibit CC.

22   • ██████████████████████████████████████████████

23   ████████████████████████████████████████

24   ██████████████ This allegation is derived at least in part from Exhibit 50 to the James

25   Declaration, which was designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

26   ONLY.    The aforementioned exhibit is attached to the Powell Declaration as Exhibit CC.

1          Pursuant to a stipulation entered into by the parties in State Action on May 15, 2015

2   pending the resolution of this dispute, the State Complaint is currently not accessible by the

3   general public.

4          Counsel to Moving Defendants and counsel to Plaintiffs held a telephonic meet and confer

5   on August 3, 2015 and reached an impasse over the relief sought in this Motion.

6      **II.     ARGUMENT**

7          **A.     Applicable Legal Standard[3]**

8          It is well-established that "a federal court may levy sanctions under its inherent power."

9   *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).   The Court may impose such sanctions "for

10  bad faith, which includes a broad range of willful improper conduct."   *Id.* at 992.   Further, Rule

11  37(b)(2)(A) of the Federal Rules of Civil Procedure provides, in pertinent part, that: "[i]f a

12  party . . . fails to obey an order to provide or permit discovery . . . the court where the action is

13  pending may issue further just orders . . . treating as contempt of court the failure to obey any

14  order."   A court is also required to assess payment of fees and expenses.   F.R.C.P. 37(b)(2)(C).

15  Moreover, a "court has the power to adjudge in civil contempt any person who willfully disobeys

16  a specific and definite order requiring him to do or to refrain from doing an act."   *On Command*

17  *Video Corp. v. Lodgenet Entertainment Corp.*, 976 F.Supp. 917, 922 (N.D. Cal. 1997).

18         A moving party establishes a prima facie showing of civil contempt by introducing clear

19  and convincing evidence showing that the other party violated a specific and definite order of the

20  court.   The contemnor must then establish why compliance was not possible.   *F.T.C. v.*

21  *Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999).   To succeed on a motion for civil

22  contempt based on a violation of a protective order, it must be established that the responding

23  party (1) "violated the [Protective Order] beyond substantial compliance, and that [(2)] the

24  violation was not based on a good faith and reasonable interpretation of the [Protective Order]."

25  *On Command*, 976 F.Supp. at 922; *see also In re Dual-Deck Video Cassette Recorder Antitrust*

26

27       [3]   If the Court determines that contempt sanctions are not yet appropriate at this stage but
     would be aided by a submission from Plaintiffs, Defendants request that the Court issue an order
28   to show cause directing that Plaintiffs and Reed Smith to demonstrate why they should not be held
     in contempt.

DEFENDANTS ELEC-TECH INTERNATIONAL CO., LTD. AND ELEC-TECH INTERNATIONAL (H.K.) CO.,
LTD.'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT AND/OR FOR SANCTIONS AGAINST
PLAINTIFFS AND REED SMITH LLP FOR VIOLATIONS OF THE PARTIES' AGREED PROTECTIVE ORDER

1    *Litigation*, 10 F.3d 693, 695 (9th Cir. 1993).   Furthermore, where a party violates a court order,

2    the party may be held in civil contempt whether or not the violation was intentional.   *Id.*

3        The *On Command Video* case is instructive.   In *On Command Video*, the parties submitted

4    to the court a stipulated protective order governing the exchange of confidential discovery

5    materials in the litigation.   976 F.Supp. at 920.   Like the Agreed Protective Order here, the

6    protective order in *On Command Video* provided that "information designated as Confidential

7    Information shall not be used by the other party for any purpose other than in connection with

8    preparation of the parties [sic] analysis of issues presented in this litigation."   *Id.*   The plaintiff

9    subsequently used confidential materials produced by the defendant during federal discovery and

10    subject to the federal protective order as the basis for filing a separate lawsuit against the

11    defendant in state court.   *Id.*   The defendant moved for contempt sanctions against the plaintiff.

12    *Id.*   The district court concluded that plaintiff violated the protective order and was in civil

13    contempt.   *Id.* at 921-24.

14        Indeed, in *On Command Video*, the fact that the plaintiff subsequently sought to seal its

15    subsequently-filed state court complaint against the defendant, which had utilized confidential

16    information produced by the defendant in the first-filed federal court litigation, was of no

17    assistance to the plaintiff.   The court found that the plaintiff's "attempts to seal the state court

18    record and the fact that the state court pleadings did not disclose any [of defendant's] proprietary

19    information]" was not a "harmless technical violation."   *Id.* at 922.   On the contrary, the parties

20    agreed to a stipulated protective order that, "as defendant correctly points out, [] prohibits use."

21    *Id.*   Thus, the court held, "Plaintiff's use of protected information to file a separate state court

22    lawsuit—as opposed to this litigation—is tantamount to no compliance [with the stipulated

23    protective order] at all."   *Id.*   This is exactly what Plaintiffs and Reed Smith have done here and

24    their conduct was "tantamount to no compliance at all" with the Agreed Protective Order.

25        **B.**      **The Court Should Find Plaintiffs And Reed Smith In Contempt**

26        Plaintiffs and Reed Smith's breach of the Agreed Protective Order, as described above,

27    warrants the Court finding them in civil contempt.   As stated above, the parties agreed to be

28    bound by the Agreed Protective Order limiting the use and disclosure of confidential information

to only this case and further prohibiting counsel from sharing such materials with even their own clients.   Plaintiffs and Reed Smith are bound by the Agreed Protective Order because it was agreed upon by the parties.

Like the plaintiff in *On Command Video*, neither Plaintiffs nor Reed Smith can credibly argue that their conduct was based on a good faith and reasonable interpretation of the Agreed Protective Order.   *Id.* at 922-23 (noting the language of the protective order left no doubt that use of discovery materials in a separate action was not permitted).   The Agreed Protective Order is likewise clear as to how and to whom highly confidential materials can be used and/or disclosed. There can be no debate that Plaintiffs and Reed Smith's use and disclosure of materials designated as highly confidential in this case went far beyond the parameters of the Agreed Protective Order. Therefore, the Court should hold Plaintiffs and Reed Smith in civil contempt for violations of the Agreed Protective Order.

Despite the fairly obvious misuse of highly confidential Protected Material produced by Defendants in violation of the Agreed Protective Order, Plaintiffs and Reed Smith have nonetheless denied any violation of the Agreed Protective Order and failed to undertake even a basic investigation into the violations after Moving Defendants registered their concerns with Reed Smith.   Courts do not excuse a party's unexplained failure to investigate breaches of a protective order.   *U.S. ex rel. Johnson v. Golden Gate Nat. Sr. Care, L.L.C.*, No. CIV. 08-1194 DWF/JJK, 2013 WL 1182905, at *5 (D. Minn. Mar. 21, 2013) ("Defendants have made no effort to explain how that carelessness led to a violation of the Court's Order, the Court finds it difficult to take this excuse at face value."); *Allia v. Target Corp.*, No. CIVA07-4130 NLHAMD, 2010 WL 1050043, at *14 (D.N.J. Mar. 17, 2010) ("[Plaintiff] cannot explain why, after Target has repeatedly informed her of her breach during the course of this litigation, through numerous letters, motions, court conferences, a counterclaim, and a protective order which reserves its right to prosecute its counterclaim, she believes that she can continue to hold onto, use, and publicly publish documents that are incontrovertibly confidential and/or privileged.").

The unsubstantiated and inadequate explanations proffered by Plaintiffs have only added to the mystery.   For example, in an email attachment sent to counsel to Defendants on May 13, 2015,

DEFENDANTS ELEC-TECH INTERNATIONAL CO., LTD. AND ELEC-TECH INTERNATIONAL (H.K.) CO., LTD.'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT AND/OR FOR SANCTIONS AGAINST PLAINTIFFS AND REED SMITH LLP FOR VIOLATIONS OF THE PARTIES' AGREED PROTECTIVE ORDER

1   Reed Smith belatedly asserted "interviews with third party witnesses John Morreale, Greg Crema,

2   Anneli Munkholm, and Michael Craven" as a separate independent source for the highly

3   confidential information that Reed Smith acquired in discovery undertaken in this case and then

4   impermissibly used in the State Complaint.   But Reed Smith did not provide any particulars about

5   these purported interviews, including such basic information as to when and where these

6   purported interviews took place, nor did they explain why they were eliciting ETI confidential

7   information from ETI's former employees.   Likewise, there is no explanation as to why Plaintiffs

8   were unable to obtain such information in the earlier interviews they conducted with the same

9   witnesses prior to filing the complaint in this court; yet somehow Plaintiffs were able to learn

10   about the same information "independently" not long after seeing such information in discovery

11   produced by Defendants on a highly confidential basis under the Agreed Protective Order.   This

12   sequence of events strains credulity.

13        In addition, on April 21, 2015, the United States Attorney for the Northern District of

14   California issued subpoenas to both Plaintiffs and Reed Smith seeking documents produced by

15   Defendants in this litigation.   As Defendants previously explained in a joint report filed with

16   Judge Lloyd, Plaintiffs appeared to have solicited a criminal investigation of Dr. Gangyi Chen and

17   possibly other Defendants.   *See* ECF 107 at 1-5.   In defiance of the Ninth Circuit's holding in *In*

18   *Re Pacific Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012) regarding the scope of the common

19   interest doctrine, Plaintiffs refused to produce their communications with the DOJ, including the

20   Federal Bureau of Investigation, regarding one or more Defendants and/or the subject matter of

21   this litigation.   This sequence of events has led Defendants to believe that Plaintiffs also, in

22   addition to impermissibly using confidential information in the State Complaint in violation of the

23   Agreed Protective Order, *also* shared such confidential information with federal law enforcement

24   personnel or otherwise encouraged the DOJ to subpoena such information.   Notably, the dates

25   noticed for compliance in the grand jury subpoenas is May 19, 2015—the exact same date that

26   Plaintiffs have previously professed as the earliest possible date for their document destruction

27   obligations to trigger under the Agreed Protective Order.   *See* Dkt. No. 137, at 2-3.   Such

28   conduct, to the extent it occurred, would directly affect the rights of Defendants in this action and

1  beyond, including but not limited to, the scope of the purported common interest privilege

2  between Plaintiffs and the DOJ that Plaintiffs relied upon in this litigation to withhold documents.

3  *See In re Grand Jury Subpoenas*, 627 F.3d 1143, 1144 (9th Cir. 2010) (noting the potential for

4  federal prosecutors and civil plaintiffs to engage in "collusion"); *In re Grand Jury Subpoena*, 646

5  F.3d 159, 168 (4th Cir. 2011) (noting that federal prosecutors are not permitted to "improperly

6  collude" with a civil plaintiff to obtain the documents from a civil defendant); *Info. Res., Inc. v.*

7  *Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998) ("[W]aiver results from the

8  voluntary submission of material to a government agency to incite it to attack the informant's

9  adversary.").

10      Finally, if Plaintiffs *did* solicit grand jury subpoenas from the DOJ in order to evade what

11  it believed were appropriate and proper document destruction obligations under the Agreed

12  Protective Order, such behavior, if tolerated, would create an escape route for any party seeking an

13  end run around a protective order issued by a United States District Court.   It cannot be that a

14  party may evade its obligations under a protective order by asking a third party to issue a subpoena.

15      Accordingly, the Court should hold Plaintiffs and Reed Smith in contempt for their

16  violations of the Agreed Protective Order.

17      **C.**    **The Court Should Order Plaintiffs To Pay For Losses Incurred By**
    **Moving Defendants As A Result Of The Contempt, Order Plaintiffs To**

18      **Refile An Amended State Complaint And Preclude Plaintiffs From**
    **Using Defendants' Confidential Information Obtained In This**

19      **Proceeding For Any Purpose.**

20      The appropriate remedies for Plaintiffs and Reed Smith's breach of the Agreed Protective

21  Order are to order (1) that Plaintiffs and Reed Smith reimburse Moving Defendants for all legal

22  fees and costs incurred in attempting to remedy and mitigate the damage and prejudice caused by

23  the breach;[4]  (2) that Plaintiffs amend the State Complaint and excise all references to Moving

24  Defendants' designated discovery materials and confidential information produced to Plaintiffs in

25  this action, and (3) that Plaintiffs, as an evidentiary sanction, be permanently prohibited from

26

27      [4]   *See Dual-Deck*, 10 F.3d at 696 (noting that party aggrieved by contemnor is entitled to

28  "'actual loss' for injuries resulting from the noncompliance.'") (quoting in part *In re Crystal Palace Gambling Hall*, 817 F.2d 1361, 1366 (9th Cir. 1987))).

Case No. 5:14-CV-02737-BLF

DEFENDANTS ELEC-TECH INTERNATIONAL CO., LTD. AND ELEC-TECH INTERNATIONAL (H.K.) CO., LTD.'S NOTICE OF MOTION AND MOTION FOR CIVIL CONTEMPT AND/OR FOR SANCTIONS AGAINST PLAINTIFFS AND REED SMITH LLP FOR VIOLATIONS OF THE PARTIES' AGREED PROTECTIVE ORDER

1  using, for any purpose (including in any litigation in the State Court Action or any other legal

2  proceeding), Moving Defendants' designated discovery materials and confidential information

3  produced to Plaintiffs in the this action and improperly used and/or relied upon in the State

4  Complaint.

5          The proposed sanctions are proportionate to the seriousness of the violations committed

6  here and are necessary to deter members of the bar and litigants from violating a protective order.

7  Modern litigation cannot proceed without protective orders that are trusted by adversaries and can

8  be effectively implemented.   Plaintiffs and Reed Smith's misconduct directly impacts the

9  integrity of protective orders upon which civil litigation depends.   "Strict observation of

10 protective orders is essential to the sound and just operations of the civil justice system in cases

11 like this one that require discovery of highly sensitive trade secrets or other confidential

12 information."  *Bradford Technologies, Inc. v. NCV Software.com*, 2013 WL 75772, at *7 (N.D.

13 Cal. Jan. 4, 2013).   Moreover, this Court should prevent Plaintiffs from accruing an unfair

14 advantage from their impermissible use of designated materials.  *Sperry Rand Corp. v. Rothlein*,

15 288 F.2d 245, 248 (2d Cir. 1961) ("We realize that by enjoining any use of or reference to

16 information or materials first divulged in the course of *federal* discovery, the district judge was

17 barring access to this evidence even after resort to such discovery processes as were available in

18 the *state courts*.   However, the broad proscription was necessary to carry out the purpose of the

19 [federal protective] order lest it otherwise be frustrated") (emphasis added).   Plaintiffs should be

20 subject to the same penalty here for their disregard of the Agreed Protective Order.

21         FRCP 37(b)(2)(C) provides that: "the court shall require the party failing to obey the order

22 or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees,

23 caused by the failure, unless the court finds that the failure was substantially justified or that other

24 circumstances make an award of expenses unjust."  *Cadence Pharm., Inc. v. Fresenius Kabi USA,*

25 *LLC*, No. 13-CV-00139 DMS MDD, 2014 WL 3341068, at *4 (S.D. Cal. July 8, 2014) (awarding

26 costs and attorneys fees to defendant for investigating the circumstances of plaintiff 's breach of

27 the protective order).   Moreover, the Court has the inherent power to order that the party who

28 violates a court order and his or her attorney to pay the reasonable attorneys' fees and costs of the

1   moving party incurred as a result of the violating party's failure to comply with the court order.

2   *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *Aloe Vera of America, Inc. v. US*, 376 F. 3d

3   960, 966 (9th Cir. 2004); *see also Henderson v. City and County of San Francisco*, 2006 WL

4   3507944, at *17-18 (N.D.Cal. 2006) (ordering Plaintiff's counsel to pay defense counsel's

5   attorneys fees based on Plaintiff's violations of Protective Order).

6          Here, there is no justification for Plaintiffs and Reed Smith's violations of the Agreed

7   Protective Order.   The Agreed Protective Order was agreed to by all parties and their counsel in

8   this case.   Reed Smith, as counsel to Plaintiffs, signed the case management conference statement

9   agreeing to abide by the Agreed Protective Order.   Moreover, the terms of the Agreed Protective

10  Order are clear.   No reasonable person could interpret the terms of the Agreed Protective Order to

11  allow for the disclosure of highly confidential materials in a new case filed in another forum.   The

12  violations of the Agreed Protective Order are aggravated by Reed Smith's refusal to accept

13  responsibility for its conduct.   Plaintiffs and Reed Smith's actions, as described above, are clear

14  violations of the Agreed Protective Order, and are not justified.   The actions at issue seriously

15  undermined the proper functioning of and public trust in the litigation system.   Moving

16  Defendants have had to expend a significant amount of time and resources to enforce the Agreed

17  Protective Order.   Moving Defendants, therefore, respectfully request that the Court impose the

18  requested sanctions against Plaintiffs and Reed Smith.

19  **III.    CONCLUSION**

20         For the reasons set forth above, Defendants respectfully request that the Court grant

21  Defendants' motion for civil contempt and for sanctions against Plaintiffs Koninklijke Philips N.V.

22  and Philips Lumileds Lighting Company LLC, and Reed Smith LLP.   Defendants respectfully

23  request that the Court issue an order:

24         (1)      finding that Plaintiffs and Reed Smith violated the Agreed Protective Order;

25         (2)      holding Plaintiffs and Reed Smith LLP in civil contempt of court for violations of

26  the Agreed Protective Order;

27         (3)      directing that Plaintiffs amend their complaint docketed in Case No. 1-15-CV-

28  278566 in the Superior Court for the County of Santa Clara, California, and excise all references

1  to Moving Defendants' designated discovery materials and confidential information produced to

2  Plaintiffs in this action;

3         (4)     directing that Plaintiffs and Reed Smith reimburse Moving Defendants' reasonable

4  attorneys' fees and costs incurred as a result of Plaintiffs and Reed Smith's violations of the

5  Agreed Protective Order (according to proof following the finding of contempt);

6         (5)     prohibiting permanently, as an evidentiary sanction, Plaintiffs' use of, for any

7  purpose (including in any litigation in the State Court Action or any other legal proceeding),

8  Moving Defendants' designated discovery materials and confidential information produced to

9  Plaintiffs in this action and improperly used and/or relied upon in the State Complaint, including,

10  without limitation, Exhibits 1, 3, 5, 6, 7,8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 23, 24, 28, 31,

11  39, 41, 43, 44, 45, and 50 to Declaration of Lawrence E. James, Jr. in Support of Opposition to

12  Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Dismiss for

13  Lack of Personal Jurisdiction, Dkt. Nos. 88-7 & 91-7 and any other designated discovery materials

14  produced in this action from which the improperly disclosed information could have been derived;

15  and

16         (6)     ordering any other sanctions that the Court deems just and proper.

17  DATED:   August 7, 2015

18                              QUINN EMANUEL URQUHART & SULLIVAN, LLP

19                              By: */s/ Michael D. Powell*_____

20                                  Claude M. Stern
                                    Michael D. Powell
21                                  Minyao Wang (admitted *pro hac vice*)
                                    Attorneys for Defendants
22

23

24

25

26

27

28

-16-                                          Case No. 5:14-CV-02737-BLF