UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ELEC-TECH INTERNATIONAL CO., LTD., et al.,<br><br>    Defendants. | Case No. 14-cv-02737-BLF<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR CIVIL CONTEMPT AND/OR SANCTIONS AGAINST PLAINTIFFS AND REED SMITH LLP**<br><br>[Re: ECF 142] |

Defendants Elec-Tech International Co., Ltd. and Elec-Tech International (H.K.) Co., Ltd. (together "Defendants") have moved for an order issuing civil contempt and/or discovery sanctions against Plaintiffs Koninklijke Philips N.V. and Philips Lumileds Lighting Company LLC (together "Plaintiffs") and their counsel Reed Smith LLP. ECF 142. Defendants allege that Plaintiffs violated the Northern District of California's Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model Order") by using information disclosed through discovery in this case to draft a state complaint ("State Complaint") and impermissibly sharing the information with federal law enforcement personnel or otherwise encouraging the Department of Justice ("DOJ") to subpoena Defendants' records. *Id.* at 2-3, 5-8, 12. Plaintiffs oppose the motion, arguing that the Model Order was not a court order and that, even if it were construed as such, no violation occurred. Pl.'s Opp, ECF 151 at 1, 2 n.3, 8.

For the reasons discussed below, the motion for civil contempt and/or sanctions is DENIED.

## I. BACKGROUND

### A. Procedural History

Plaintiffs sued Defendants in this Court, alleging numerous state claims regarding misappropriation of trade secrets, as well as violation of the federal Computer Fraud and Abuse Act ("CFAA"). Compl., ECF 1. Defendants then moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. ECF 34, 35, 36.

To enable discovery during the litigation, the parties orally agreed that the Model Order would govern until they finalized a fully-negotiated protective order. *See* Joint Case Management Statement ("JCMS"), ECF 56 at 14. Neither party signed the Model Order, nor did the Court. *See* Pl.'s Opp. at 2 n.3, Exh. 1; *see also* JCMS at 20. Defendants provided Plaintiffs with limited jurisdictional discovery.

On March 20, 2015, Defendants succeeded in obtaining dismissal of Plaintiffs' single federal claim and the Court declined to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims. Order, ECF 122 at 2. The Court acknowledged what the parties clearly anticipated—that the case would likely be refiled in state court. Transcript, ECF 126-4 at 41.

Four days after the federal case was dismissed, Plaintiffs filed a state court action against Defendants alleging nearly identical claims, but in greater factual detail.[1] *See* Santa Clara Cnty. Super. Ct. Case No. 1-15-CV-278566 ("State Case"). A week later, Defendants notified Plaintiffs that they believed Plaintiffs had impermissibly used confidential information from the documents produced in the federal case in the State Complaint. *See* Def.'s Mot. at 2. Though Plaintiffs denied any wrongdoing, the parties agreed to seal the full version of the State Complaint and Plaintiffs filed a redacted version on the public docket. *See* Pl.'s Opp. at 4.

In August, Defendants filed the instant motion. Defendants argue that, in drafting the State Complaint, Plaintiffs used documents that were subject to the Model Order, which limits their use to "*this* litigation" and prohibits distribution beyond "outside counsel, outside experts, and certain

---

[1] Certain parties and claims were not refiled in the state court case. Shenzhen Retop LED Display Co., Ltd. and ETI LED Solutions Inc. are not named as defendants in the State Complaint. In addition, the State Complaint does not include the CFAA, conversion, or common law misappropriation claims.

2

court personnel." Def.'s Mot. at 5 (emphasis in original). In filing the State Complaint, Defendants argue, Plaintiffs violated both requirements. In addition, Defendants suggest that Reed Smith and Plaintiffs shared protected information with and colluded with the DOJ to set deadlines that evaded their document destruction obligations under the Model Order. *Id.* at 12-13. Defendants seek contempt or discovery sanctions, as well as attorneys' fees and costs under Rule 37(b) or the Court's inherent power. *Id.* at 14-15.

Plaintiffs argue that the motion for civil contempt and sanctions under Rule 37(b) must fail because there is no order for the Court to enforce. Pl.'s Mot. at 2 n.3. With respect to the Court's inherent power to impose sanctions, Plaintiffs argue that it does not extend to the circumstances of this case because the Court's process was not threatened by the alleged violations. Pl.'s Letter Brief, ECF 168 at 2. Finally, Plaintiffs assert that, even if the Model Order were construed as a court order, they did not violate it: the information they used for each allegation was already in the public domain, shared by a permissible third-party source, or known to Plaintiffs before disclosure, Pl.'s Opp. at 4-8, and they never colluded with the DOJ but "have a statutory right to confer with [the DOJ]," *id.* at 13.

The Court has considered the briefing and evidence submitted by the parties, as well as the oral argument presented at the hearing on September 10, 2015.[2]

**II.     ANALYSIS**

Violation of a protective order is a serious offense that carries stiff penalties, including punishment by contempt. Likewise, adherence to discovery obligations concerning the protection of confidential materials requires diligence by counsel; violation can lead to monetary sanctions under Rule 37(b). Fundamental to both violations, however, is the existence of a valid court order.

While parties commonly enter into an agreement to protect their confidential information and courts often take on the special role of supervising compliance by approving the agreement as a court order, that did not happen here. Instead, as discussed at length below, the parties orally

---

[2] Defendants asked the Court to disregard any arguments in Plaintiffs' supplemental letter brief that do not concern the Court's jurisdiction. Def.'s Letter Brief at 1 n.1. The Court has considered Plaintiffs' arguments concerning the Court's post-dismissal jurisdiction under Rule 37(b) and its inherent power.

3

agreed to abide by a model order without even determining the application of certain optional terms. This interim agreement was meant to serve as a stop-gap measure until the parties could agree on a final version. But the parties never came to an agreement, much less one that the Court elevated to an order.

### A. Contempt

To justify a finding of contempt, a court must determine that a party 1) "violated [a] court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)*; see also* F.R.C.P. 37(b)(2)(A). "Civil contempt in this context consists of a party's disobedience to a *specific and definite court order*." *In re Dual-Deck*, 10 F. 3d at 695 (emphasis added). Thus, contempt requires the existence of a specific and definite court order.

Defendants argue that the Model Order qualifies "because it was agreed upon by the parties," Def.'s Mot. at 11, and because "all parties have treated [it] as a binding court order," Def.'s Reply, ECF 157 at 1 n. 2. Defendants point to Plaintiffs' earlier Motion to Clarify or Amend the Protective Order as evidence of the parties' shared belief that the Model Order constituted a court order and thus required court intervention for clarification or amendment. *Id.; see also* Pl's Mot. to Clarify or Amend, ECF 137. However, Defendants fail to note that the parties clarified the term in question by stipulation and Plaintiffs withdrew their motion, thereby resolving the issue without the Court. *See* Stip. and Order, ECF 140.

Defendants rely heavily on *On Command Video Corp. v. Lodgenet Entertainment Corp.*, 976 F. Supp. 917 (N.D. Cal. 1997). In that case, the court held the plaintiff in contempt for using materials governed by a protective order in a federal case to file a state claim. *Id.* at 921. However, the parties had submitted a stipulated protective order to the court and the court had approved and filed the order. *Id.* at 920. This Court has not engaged in any such approval or filing. Rather, as Plaintiffs explain, the "parties have never filed, and the Court has never entered, the Model Order as an *order* in this case." Pl.'s Opp. at 8 (emphasis in original).

Thus, while the parties may have entered into an agreement and Defendants might choose

4

to pursue a breach of contract claim, Defendants have failed to show that a court order exists. As a result, Defendants' motion fails on the first prong of the contempt inquiry: there is no court order for the Plaintiffs to violate.

Accordingly, Defendants' motion for civil contempt is DENIED.

### B. Rule 37(b) Discovery Sanctions

Rule 37(b)(2) grants a district court the power to issue sanctions against a party for not obeying a court order related to discovery. As with contempt, a threshold requirement for Rule 37(b)(2) sanctions is the existence of a court order. *See, e.g., Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) ("Rule 37(b)(2)[ ] require[s] that there be some form of court order that has been disobeyed"); *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012). As discussed above, no court order exists in this case. Therefore, Defendant's motion for sanctions under Rule 37(b)(2) is DENIED.

### C. Discovery Sanctions Under Court's Inherent Power

Under its inherent power, a court may impose sanctions for "willful disobedience of a court order" or "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980)). While this power may extend to sanction "a broad range of willful improper conduct," *id.* at 992, and can survive dismissal of the underlying case, *see Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122 (9th Cir. 2015), it cannot go beyond what is necessary to enable a court "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Plaintiffs argue that the facts in this case mirror those in *Kokkonen*, where the Supreme Court found that a district court cannot use its inherent power to sanction a party for violating a private agreement between the parties after a case concludes. *See* Pl.'s Letter Brief at 2. The parties in *Kokkonen* reached an oral settlement agreement that they recited to the district judge in chambers. 511 U.S. at 376. The parties then executed a stipulation and order of dismissal with prejudice, which the judge signed. *Id.* at 376-77. Following dismissal, the parties disagreed about

1  their obligations under the settlement agreement and one party moved to enforce the agreement in
2  the district court. *Id.* at 377. The district court entered an enforcement order, relying on its inherent
3  power. *Id.*

4  Though the Ninth Circuit upheld the district court's invocation of its inherent power, the
5  Supreme Court found that the court's power could not extend so far. A federal court's inherent
6  power exists "to protect [the court's] proceedings and vindicate its authority." *Id.* at 380. In
7  *Kokkonen,* the only expression of court authority—a court order that the case be dismissed—was
8  "in no way flouted or imperiled by the alleged breach of the settlement agreement." *Id.* at 380. As
9  a result, "the power asked for . . . [wa]s quite remote from" the inherent power that is available.
10 Thus, enforcement of a private agreement without a court order and post-dismissal falls outside
11 the bounds of a federal court's inherent power.

12 Under *Kokkonen,* the Court cannot impose sanctions using its inherent power here. As in
13 *Kokkonen*, the agreement at issue was entered orally by the parties and was never cemented as a
14 court order. In fact, this Court had even less interaction with the private agreement than did the
15 *Kokkonen* district court, which heard the terms read aloud in chambers. Furthermore, as in
16 *Kokkonen,* the breach alleged here—violation of a private confidentiality agreement—did not
17 "flout or imperil" any disposition by this Court. Even if Plaintiffs used protected information
18 disclosed in federal discovery to file the State Complaint, that conduct in no way threatens *this*
19 Court's proceedings, authority, or decrees.

20 Rather, if any court has the authority to issue a remedy for Plaintiffs' alleged violation in
21 this case, it is the state court. Any violation of the parties' agreement took place under the
22 jurisdiction and supervision of that court, and the process and decision-making of that court alone
23 could have been harmed or impeded. Therefore, a request for a finding of violation and
24 determination of a reasonable remedy are properly addressed to the state court.

25 Defendants counter that, under the Ninth Circuit's recent ruling in *Haeger*, this Court can
26 use its inherent power to sanction discovery misconduct after dismissal of the case. *See* Def.'s
27 Letter Brief at 1. In *Haeger,* the offending party engaged in direct and repeated fraud on the court.
28 793 F.3d at 1126. Counsel consistently delayed production of relevant information, concealed

relevant documents, and made misleading and false in-court statements. *Id.* After dismissal, one of the parties read an article that strongly suggested that the offending party had withheld evidence and brought a motion for sanctions. *Id.* Though the court had dismissed the case, it issued an order to produce all relevant materials. *Id.* Only as a result of the court's involvement, including two discovery-related orders, was the extent of the misconduct revealed. *Id.* at 1129.

In contrast, here, even if misconduct occurred, the Court was not involved. Defendants do not allege that Plaintiffs misled this Court, nor do they argue that Plaintiffs' misconduct—the use of confidential information to file this case before a *different* court—had any effect on this Court's process or decision-making. Thus, *Haeger* cannot be read to give this Court the inherent power to impose sanctions.

### D. Violations, if any, Were Technical and not Evidence of Bad Faith

Furthermore, the Court finds that Plaintiffs' conduct does not rise to the level of bad faith required in *Haeger* to impose sanctions. "Before awarding sanctions pursuant to its inherent power, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Haeger*, 793 F.3d at 1132 (internal citation omitted). The Court cannot make such a finding here. As a result, even if the Court found that it did have the power to enforce sanctions, it would not choose to do so given the facts of this case.

Defendants argue that Plaintiffs acted in bad faith by violating various sections of the Model Order. Specifically, Defendants point to Section 7.1, which prohibits the use of protected material outside of "this case," Sections 7.2 and 7.3, which disallow disclosure of confidential information to the public, and Section 14.4, which prohibits the public filing of protected material even in this case without written permission from the designating party or the court. *See* Def.'s Mot. at 4-5; Pl.'s Opp., Exh. 1,§§ 7.1-7.3, 14.4. Defendants argue that Plaintiffs' public filing of their State Complaint violated each of these sections.

To assert that these violations rise to bad faith, Defendants again rely on their incorrect characterization of the Model Order as a court order. *See* Def.'s Mot. at 9. They argue that violation of a court order is sufficient reason for the Court to invoke its inherent power. *Id.*

However, as Plaintiffs correctly note, *see* Pl.'s Opp. at 8, and this Order has discussed at length above, the Model Order is not a court order. Accordingly, this argument must fail.

Defendants also argue that Plaintiffs could not have acted in good faith because the Model Order's terms are clear and Plaintiffs nevertheless violated them. *See* Def.'s Mot. at 11. Plaintiffs respond that they did not violate the terms because the Model Order expressly excludes the type information used in the State Complaint—that is, information gleaned from the public domain or a lawful third-party. *See* Pl.'s Opp. at 9-10 and Exh. 1, §3. Defendants have failed to demonstrate that Plaintiffs had no other lawful, public source for this information.

In *Haeger,* the case Defendant's rely upon for the Court's continued jurisdiction, evidence of bad faith was abundant. The sanctioned parties deliberately "adopted a plan of making discovery as difficult as possible" and repeatedly made false statements to the court "in an attempt to hide their behavior." 793 F.3d at 1134-35. Plaintiffs brought the misconduct to the court's attention so frequently that "at various points, the [c]ourt became frustrated with [the] apparently unsubstantiated claims," but still the sanctioned parties continued their pattern of misconduct. *Id.* at 1134. Without the misconduct, the case likely "would have settled much earlier" and for considerably more money. *Id*. at 1129-30.

In contrast, the Court finds that Plaintiffs' violations in this case, if any, were technical and not evidence of bad faith. Unlike the parties in *Haeger,* Plaintiffs did not respond to Defendants' notification regarding the alleged violation by misrepresenting their actions to the Court or Defendants. Instead, notwithstanding their claim that no violation occurred, Plaintiffs refiled the State Complaint in redacted form. Similarly, in response to the instant motion, Plaintiffs did not minimize Defendants' allegations but instead worked to identify for this Court the permissible source for each challenged State Complaint allegation.[3]

---

[3] Plaintiffs contend that all but two challenged allegations were based on information in the public domain. *See* Pl.'s Opp. at 10. While Plaintiffs admit that they learned of the two non-public allegations during their investigation of Defendants' alleged trade secret theft, they contend that the information also came from a lawful third-party source and therefore falls outside of the Model Order's scope. *See* Hearing Transcript, ECF 175-2 at 72-74. (In deference to Defendant's assertion of confidentiality, the Court omits a description of these two items, which are known to the parties and set forth in the unredacted version of the Hearing Transcript.) Defendant has failed to demonstrate that Plaintiff had no other lawful, public source for this information or any of the

Because the Court finds no evidence of bad faith, the Court need not consider each alleged violation in turn. The Court addresses Defendants' primary arguments below.

With respect to Section 7.1, which limits use of disclosed information to "this case," the Court finds that the state case is the same case as the federal case. Following dismissal of the one federal claim here, Plaintiffs—as expected—refiled this case in state court. They simply walked across the street with their allegations, adding neither new causes of action nor new defendants.

Defendants cite two cases sanctioning the filing of a state case on the basis of information gathered from protected federal discovery. In each of those cases, however, the state case added claims or parties.[4] In *On Command*, the plaintiff argued that the factual and legal issues in the cases were not the same, *id*. at 940, and the magistrate judge found the similarities alleged by the defendant "unpersuasive," *id*. at 943. Similarly, in *Sperry Rand Corp. v. Rothlein*, the plaintiff added a new party, a corporation that could not have been joined in federal court, in the state case. 288 F.2d 245, 249-50 (2d Cir. 1961). Furthermore, the court in *Sperry Rand* determined that the state case was brought "to undermine a decision already made by the [federal] court." *Id.* at 249.

In sharp contrast, all parties and the Court anticipated the State Case here. When dismissing the federal claim, the Court noted that Plaintiffs' state claims were well pled and that, if the allegations were true, the claims were strong. As in *Dual-Deck*, privacy of protected material, "not immunity from suit, was the legitimate purpose of the protective order." 10 F.3d at 696. Accordingly, the Court cannot find that Plaintiffs violated Section 7.1 of the Model Order, much less that they did so in bad faith.

As to Sections 7.2 (limiting disclosure of "CONFIDENTIAL" information), 7.3 (limiting disclosure of "HIGHLY CONFIDENTIAL/ATTORNEYS' EYES ONLY" information), or 14.4 (controlling filing of protected material), if there was any violation, it was merely technical and did not exhibit bad faith. In regard to 14.4, though Plaintiffs initially filed the State Complaint in unredacted form on the state court's public docket, they sealed the document and filed a redacted

---

allegations set forth in the State Complaint.
[4] Each of these cases also involved violation of a court order or Federal Rule. The Court deals with this distinction in Sections II.A-C of this order.

version upon notification from Defendants of their alleged use of protected material. The State Complaint is now publicly available only in redacted form, in compliance with Section 14.4. *See* Pl.'s Opp. at 4. With respect to Sections 7.2 and 7.3, Plaintiffs identified permissible sources for the challenged allegations and Defendants have failed to demonstrate that Plaintiffs had no lawful source. Thus, Defendants have not established impermissible disclosure of confidential or highly confidential materials based on the contents of the State Complaint.[5]

At most, Plaintiffs' conduct here reflects inadvertence in failing to redact information or to more carefully review the State Complaint for allegations that might expose information not otherwise obtained from the public domain. Thus, there is no basis for the Court to find bad faith. Accordingly, Defendant's motion for sanctions under the Court's inherent power is DENIED.

## IV.  ORDER

For the foregoing reasons, Defendants' Motion for Contempt and/or Sanctions is DENIED.

Dated:  October 26, 2015

_____
BETH LABSON FREEMAN
United States District Judge

---

[5] Defendants focus their accusations on disclosures contained on the face of the State Complaint. Though Defendants mention their "belie[f]" that Plaintiffs "also shared such confidential information with federal law enforcement personnel," Defendants do not provide sufficient evidence of such disclosures to give rise to a finding of bad faith. Def.'s Mot. at 12. Instead, they offer an equally, if not more, likely alternative for any interaction between Plaintiffs and the DOJ: Plaintiffs may have "encouraged the DOJ to subpoena such information," *id.,* which would not have violated the Model Order. Defendants' unsupported allegation regarding the DOJ thus cannot justify issuing sanctions in this case.